UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Timothy D. RICKS, | 1:16-cv-2323-RBK |
| Petitioner, | **OPINION** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Petition to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 brought by Petitioner Timothy D. Ricks. [Docket No. 1.] Based on the below analysis, the Court will deny Ricks' Petition.

**I.     BACKGROUND**

This case stems from Ricks' involvement in a scheme by which he and several co-conspirators perpetrated a mortgage fraud conspiracy between 2004 and 2008. The Government alleged that Ricks "played a role in approximately 41 fraudulent real estate transactions in New Jersey, Florida, and Georgia that resulted in millions of dollars in losses to banks and allowed Ricks to pocked hundreds of thousands of dollars." [Docket No. 14, at 2 (citing Docket No. 14-1, ¶ 174).] Eventually, on November 6, 2013, a grand jury returned a two-count Superseding Indictment, charging Ricks with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 ("Count One") and Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) ("Count Two"). Eventually, Ricks proffered and agreed to cooperate with the

Government's investigation. Consequently, on or about February 27, 2013, Ricks entered into a plea agreement with the Government, pursuant to which he pled guilty to both counts from the Superseding Indictment.

Ricks notes that the Superseding Indictment "listed 31 distinct transactions which the Government alleged [to] be part of the scheme," with a total gross loss amount of $9,097,503.11. [Docket No. 1-1, at 1.] It also alleged that the conspiracy "caused $2,774,481.28 to be deposited and otherwise transferred from the proceeds of the transactions." [Id. at 2.] The plea agreement, on the other hand, listed an additional 22 properties that were not included in the Superseding Indictment. The plea stated a gross loss amount of $16,380,699.63. Ricks claims that these properties account for the approximately $7 million difference between the gross loss amounts in the plea agreement and the Superseding Indictment.

By the time Ricks was sentenced, victims had recovered approximately $8.5 million, so the loss net value attributed to him was calculated at approximately $7.9 million. This put his loss in the Guidelines range of greater than $7 million but less than $20 million, which warranted a sixteen-level enhancement to the offense level. With Ricks' various other enhancements,[1] the offense level was 33. This, when combined with his Criminal History Category of I, led to an advisory Guidelines range of 135 to 168 months' imprisonment. However, after a downward departure based on Ricks' substantial cooperation, the Court ultimately sentenced Ricks to 84 months' imprisonment on both counts, to be served concurrently.

At the core of Ricks' argument is that the 22 properties that were not included in the

---

[1] Ricks also received "a two-level enhancement for the use of sophisticated means;" "a one-level enhancement due to a plea to a count of money laundering conspiracy;" and "a four-level enhancement related to Ricks' leadership role in the conspiracy." [Docket No. 14, at 4.]

Superseding Indictment should not have been included in the plea agreement. He claims that the net loss value of the properties included in the Superseding Indictment would have been less than $7 million, and therefore his advisory Guidelines range would have been lower. Evidently, Ricks believes that he would have received a lesser sentence if the 22 properties in question had not been included in the plea agreement.

Ricks lays the blame for this supposed oversight at the feet of his court-appointed Defense Counsel, who was appointed on December 12, 2012. A few short months later, Ricks had agreed to the plea agreement in question. Ricks claims that he tried to discuss the plea agreement with Defense Counsel prior to signing it, but that Defense Counsel told him that the details were unimportant — the mere fact that he had agreed to cooperate is what really mattered. Ricks claims that Defense Counsel had told him that he was pleading only to the accusations contained in the Superseding Indictment. He claims that Defense Counsel's representation was *per se* ineffective because the plea agreement, by including more properties than were included in the Superseding Indictment, was actually worse than simply going to trial and being found guilty of the two charges by a jury.

Importantly, Ricks does not argue that the plea hearing was inadequate in any way. He does not contest that he testified under oath that he had read and understood the plea agreement, that he was satisfied with Defense Counsel's representation, that he was aware of the potential maximum sentence of forty years, and that he understood how the Court would calculate his sentence.

**II.   DISCUSSION**

**A.   Jurisdiction**

The Court exercises jurisdiction over this case pursuant to 28 U.S.C. § 2255(f)(1), since Ricks filed his Petition within one year of the date on which his judgment of conviction became final. *See* 28 U.S.C. § 2255(f)(1).

**B.   Evidentiary Hearing**

A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief. *Id.* § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). In this case, the record conclusively demonstrates that Ricks is not entitled to relief. Therefore, an evidentiary hearing is not necessary.

**C.   Ineffective Assistance of Counsel**

Under *Strickland v. Washington*, a claim of ineffective assistance of counsel requires a petitioner to show that (1) defense counsel's performance was deficient and (2) the deficiency actually prejudiced the petitioner. 466 U.S. 668, 687 (1984). "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696. Here, the Government argues that Ricks has failed to meet both of those prongs. The Court will hold that Defense Counsel's performance was not deficient. Therefore, the Petition will be denied.

**1.   Deficient Performance**

The first Strickland prong is satisfied if defense counsel made errors that were serious enough such that counsel was not functioning as the "counsel" that the Sixth Amendment guarantees. Id. This is a high standard, especially given the strong presumption that "counsel's

conduct falls within the wide range of reasonable professional assistance." Id. at 689; United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). A court must be "highly deferential" to a defense counsel's decisions and should not "second-guess counsel's assistance after conviction." Strickland, 466 U.S. at 689; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996).

But "second-guess" is precisely what Ricks attempts to do here. He claims that Defense Counsel negotiated a bad plea deal and that, had he known the terms, he would not have accepted the deal. But these allegations are belied by the testimony provided at his plea hearing. The Court's questioning of Ricks amply demonstrated that Ricks knew of the terms of his plea agreement, agreed to them, and was satisfied with Defense Counsel's performance. Ricks' allegations about Defense Counsel's performance are self-serving and directly contradict the evidence presented during the court proceedings in this case. Ricks appears to regret entering into the plea agreement because he was ultimately sentenced to more time than he would have liked. But he knew that was a possibility, and he accepted that, along with all of the other terms of the agreement, when he pled guilty. His arguments do not demonstrate deficient performance by Defense Counsel. Therefore, his Petition will be denied.

### D.     Certificate of Appealability

A petitioner may not appeal a final order in a § 2255 proceeding to the court of appeals unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court will not grant a certificate of appealability here because jurists of reason would not find it debatable that Ricks has failed to make a substantial showing of the denial of a constitutional right.

## III.     CONCLUSION

For the reasons expressed above, the Court will deny Ricks' Petition to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. No certificate of appealability shall issue. An accompanying Order will be entered.

July 8, 2020                                                s/Robert B. Kugler
Date                                                              ROBERT B. KUGLER, U.S.D.J.